Sheldon SWARTZENTRUBER,
Plaintiff,

v.

GUNITE CORPORATION, Defendant.

No. 3:99CV0456RM.

United States District Court,
N.D. Indiana,
South Bend Division.

May 22, 2000.

Sheldon L Swartzentruber, Cassapolis, MI, pro se.

Michael A Warner, Jr, Franczek Sullivan, Franczek Sullivan Mann Crement Hein Relias P.C., Chicago, IL, for Gunite Corporation, defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Sheldon Swartzentruber sues his employer, Gunite Corporation, alleging religious discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Gunite requests that the court enter summary judgment in its favor.

> A motion for summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, "a trial court must view the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." To defeat a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in his pleadings, but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." However, neither presenting a scintilla of evidence, nor the mere existence of some alleged factual dispute between the parties or some metaphysical doubt as to the material facts, is sufficient to oppose a motion for summary judgment. The party must supply evidence sufficient to allow a jury to render a verdict in his favor.

*Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1087–1088 (7th Cir.2000).

### Facts

Gunite manufactures truck wheels, brake drums, hubs, rotors and related

parts for the heavy truck industry from two manufacturing facilities in Elkhart, Indiana. Mr. Swartzentruber, a self-professed member of the American Knights of the Ku Klux Klan, has been a Gunite factory worker since May 17, 1993.

Gunite maintains and enforces a written policy affording an equal opportunity for employment to all individuals "regardless of their religion, race, color, sex, age, national origin, handicap, or veteran status" and prohibiting sexual and racial harassment. On June 3, 1998, a group of second-shift black employees complained to Gunite's personnel manager Mark Nelson that Mr. Swartzentruber was displaying a recently obtained tattoo on his forearm of a hooded figure standing in front of a burning cross. The complaining employees said they found the tattoo offensive and threatening.

After investigating the complaints and inspecting the tattoo, Mr. Nelson determined that the tattoo offended him and others, and could contribute to a hostile working environment. Mr. Nelson instructed Mr. Swartzentruber to cover the tattoo while at work and told him that failure to do so could result in disciplinary action including discharge. Mr. Swartzentruber raised concerns about cleaning his arm and his ability to avoid dermatitis problems and was given permission to use the wash basins as required, but was told to have the tattoo covered whenever he was away from the wash basin. Mr. Swartzentruber also complained about black employees' tattoos, which he said he found threatening and offensive. Mr. Swartzentruber didn't tell Mr. Nelson his tattoo was religious in nature or that his religious beliefs required him to display the tattoo at work.

In late July, Mr. Nelson received complaints from two employees that Mr. Swartzentruber was leaving his tattoo uncovered for extended periods. Mr. Nelson told Gunite Supervisors Dan Closser and Wayne Adkins to monitor Mr. Swartzentruber's compliance with the earlier directive to keep the tattoo covered. After several days of monitoring Mr. Swartzentruber, Mr. Closser and Mr. Adkins reported that he kept the tattoo covered. Mr. Swartzentruber found the monitoring harassing, and filed a union grievance regarding his concerns. At a third step grievance meeting on August 17, 1998, Mr. Nelson directed Mr. Closser simply to monitor Mr. Swartzentruber's compliance and not to talk about the tattoo or interrogate Mr. Swartzentruber. Other than objecting to being called to a supervisor's office in November 1999 regarding a complaint about noncompliance, Mr. Swartzentruber has raised no further concerns about how he's been treated by his supervisors.

## Analysis

Although it is unclear from the *pro se* complaint,[1] Mr. Swartenzentruber apparently alleges Gunite discriminated against him by not accommodating his religious beliefs when Gunite forced him to cover his tattoo.

 Title VII makes it unlawful to discriminate against an individual because of that individual's religion, *see* 42 U.S.C. § 2000e–2(a)(1), and defines "religion" as including "all aspects of religious observance and practice, as well as belief," 42 U.S.C. § 2000e(j). To establish a prima facie case of religious discrimination, a plaintiff must show that (1) he has a sincere religious belief, observance or practice that conflicts with an employment requirement; (2) he informed his employer of the conflict; and (3) the religious practice was the basis for the adverse employment decision. *See E.E.O.C. v. United Parcel Serv.*, 94 F.3d 314, 317 (7th Cir. 1996); *Wright v. Runyon*, 2 F.3d 214, 216 n. 4 (7th Cir.1993). Once a plaintiff makes a prima facie case, the statute imposes "an affirmative duty on employers to reasonably accommodate the religious observ-

---

1. Although an E.E.O.C. charge could help define Mr. Swartzentruber's claim, the E.E.O.C. charge is not a part of the record.

ances and practices of its employees, unless the employer can demonstrate that such an accommodation would cause undue hardship to the conduct of its business." *E.E.O.C. v. Ilona of Hungary, Inc.,* 108 F.3d 1569, 1574–1575 (7th Cir.1997) (citing *Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 63 & n. 1, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986); *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 74, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977)). The employer need not select the employee's proposal of reasonable accommodation; any reasonable accommodation by the employer is sufficient to comply with the statute. *See Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. at 69, 107 S.Ct. 367.

■ Gunite argues that Mr. Swartzentruber's claim fails as a matter of law because he cannot establish a prima facie case, because he was offered a reasonable accommodation, and because any alternative accommodation would impose an undue hardship on both Gunite and its employees.

As to the prima facie case, Gunite contends that Mr. Swartzentruber cannot show that he holds a sincere religious belief that conflicts with an employment requirement. Mr. Swartzentruber states that since the summer of 1996, he has been a member of the Church of the American Knights of the Ku Klux Klan, a religious organization, and that the "Firey Cross" tattooed on his arm is one of that church's seven sacred symbols. He says the tattoo depicts two additional sacred symbols. Mr. Swartzentruber identifies what he defines as an unfair requirement that he cover his tattoo while others are not required to cover what he views as offensive tattoos as the adverse employment action. But Mr. Swartzentruber does not present admissible evidence, or even contend without evidence, that being required to cover up his tattoo at work conflicts with his religious beliefs, or that he told Gunite about any conflict with his beliefs and Gunite's demand that he cover his tattoo. Mr. Swartzentruber doesn't satisfy the first and second elements of a prima facie case.

Summary judgment still would be proper even if Mr. Swartzentruber had made out a prima facie case, because Gunite has shown that it reasonably accommodated his asserted religious observance or practice. As "[s]ome would certainly view a burning cross as 'a precursor to physical violence and abuse against African–Americans and ... an unmistakable symbol of hatred and violence based on virulent notions of racial supremacy,'" *United States v. Hayward,* 6 F.3d 1241, 1251 (7th Cir. 1993) (quoting Charles H. Jones, *Proscribing Hate: Distinctions Between Criminal Harm and Protected Expression,* 18 Wm. Mitchell L.Rev. 935, 948 (1992)), the court agrees with Gunite that any greater accommodation would cause it an undue hardship. Gunite demanded that Mr. Swartzentruber cover his tattoo because it violated Gunite's racial harassment policy and offended other employees. Gunite accommodated his tattoo depiction of his religious belief that many would view as a racist and violent symbol by allowing him to work with the tattoo covered; Title VII doesn't require more.

Mr. Swartzentruber complains in his response to the summary judgment motion that Gunite employees and supervisors harass him relentlessly about his tattoo, and he wants the harassment stopped. Mr. Swartzentruber, acting *pro se*, tried unsuccessfully to amend his to reflect the harassment claim, but even assuming the complaint contained a harassment claim, the claim would also fail as a matter of law.

■ Title VII prohibits discrimination against an individual and extends to workplace harassment attributable to the plaintiff's religion. *See Venters v. City of Delphi,* 123 F.3d 956, 974–975 (7th Cir.1997) (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). To prevail on a hostile environment harassment claim, a plaintiff must show that his work environment was both subjectively and objectively hostile. *See Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), *Faragher v. City of*

*Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *see also Venters,* 123 F.3d at 975. An objectively hostile environment is one that a reasonable person would find hostile or abusive, *see Harris v. Forklift Systems,* 510 U.S. at 21, 114 S.Ct. 367, and the objective standard requires the court to consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," *id.* at 23, 114 S.Ct. 367.

■ The law "does not prohibit all verbal or physical harassment in the workplace," but with a claim such as Mr. Swartzentruber's, the harassment must be because of a religious belief. *Oncale v. Sundowner Offshore Services,* 523 U.S. at 80, 118 S.Ct. 998; *see also Adusumilli v. City of Chicago,* 164 F.3d at 361 (not all workplace conduct that may be described as harassment affects a term, condition, or privilege of employment within the meaning of Title VII). To be actionable, the harassment must be "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.'" *Faragher v. Boca Raton,* 524 U.S. at 786, 118 S.Ct. 2275 (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. at 67, 106 S.Ct. 2399); *see also Venters v. City of Delphi,* 123 F.3d at 975. Subject to certain defenses, employers are vicariously liable for hostile environment sexual harassment by supervisors. *See Faragher v. Boca Raton,* 524 U.S. at 807, 118 S.Ct. 2275; and *Burlington Industries, Inc. v. Ellerth,* 524 U.S.

742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

■ Mr. Swartzentruber must show that a rational trier of fact could find that because of his religion, his workplace is permeated with discriminatory conduct— intimidation, ridicule, insult—that is sufficiently severe or pervasive to alter the conditions of his employment. To establish the severity or pervasiveness of the conduct, he must address such factors as the frequency, severity and threatening or humiliating nature of the discriminatory conduct and whether it unreasonably interferes with his work performance. To establish an alteration in the terms or conditions of his employment he must demonstrate an adverse employment action consisting of a tangible employment action, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," *Burlington Industries v. Ellerth,* 524 U.S. at 761, 118 S.Ct. 2257, or a non-tangible employment action, such as discriminatory conduct so severe or pervasive that it creates an objectively and subjectively abusive working environment.

■ Mr. Swartzentruber identifies incidents of harassment, but his evidence [2] shows that the harassment occurred because of his self-identification as a member of the KKK, not because of his religious beliefs. The alleged incidents of harassment occurred in mid–1996 after the local paper ran a picture of him "show[ing] support for Klan speakers" at a KKK rally in Goshen, Indiana; in mid-August 1998 after he came to work with a tattoo extending from his elbow to his wrist that depicted a burning cross and a hooded man; in late

2. Gunite correctly points out that the evidence to which Mr. Swartzentruber cites to as incidents of harassment (Exhibits B through F) are not admissible evidence based on personal knowledge as required by Rule 56(e) of the Federal Rules of Civil Procedure, and the exhibits do not meet the requirements of 28 U.S.C. § 1746. Because of Mr. Swartzentruber's *pro se* status and his obvious attempt to follow the statutory requirements in his response, and because the exhibits would not change the outcome if properly presented, the court excuses the technical non-compliance in these exhibits. *See Pfeil v. Rogers,* 757 F.2d 850, 859 (7th Cir.1985) (a district court should not be unnecessarily hyper-technical and overly harsh on a party who unintentionally fails to make certain that all technical, non-substantive requirements are satisfied).

November 1998 after the television show "48 Hours" identified Mr. Swartzentruber as a KKK member; and in November 1999 after Gunite received a complaint that Mr. Swartzentruber's tattoo was not covered.

Mr. Swartzentruber says that after the Klan rally, a pencil lead was broken off in the keyhole of his tool box, his rollaway toolbox was hidden from him, and several African–American individuals congregated around his workplace. The toolbox incidents amount to nuisance rather than harassment, a trivial annoyance insufficient to create an actionable hostile environment. In addition, Gunite gave Mr. Swartzentruber permission to chain and lock his toolbox. When Mr. Swartzentruber reported the gathering around his workplace, which consisted of no more than African American employees staring at him, Gunite told the group that they would be written up if they didn't disburse immediately, and the group disbursed. Mr. Swartzentruber says that smaller groups continued to gather, but he provides no evidence of how often they did so, or that he reported it to the company.

After the "48 Hours" show in late November 1998, his two front tires were slashed—which may be both subjectively and objectively hostile. Mr. Swartzentruber provides no evidence, however, that any damage to his car could be attributed to Gunite, its employees, or his religious beliefs. Given the number of people in the Goshen and Elkhart communities with reason to resent Mr. Swartzentruber in light of the disclosure, no reasonable inference can be drawn against Gunite.

The other incidents of which Mr. Swartzentruber complains simply are not harassment. A company demand that he cover a tattoo that, to many people, symbolizes racism and hate and company monitoring to ensure compliance is not harassment and does not contribute to an environment that could reasonably be viewed as hostile.

The court doesn't doubt that Mr. Swartzentruber believes his workplace to be hostile. But the environment must be objec-tively hostile as well, and the "objective severity of harassment should be judged from the perspective a reasonable person in the plaintiff's position, considering 'all the circumstances' ... [and] that inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (citing *Harris v. Forklift Systems*, 510 U.S. at 21, 114 S.Ct. 367). Mr. Swartzentruber has no claim for hostile environment harassment.

### Conclusion

For the reasons stated above, the court

(1) GRANTS Gunite's motion for summary judgment [Docket No. 10]; and

(2) DENIES AS MOOT Mr. Swartzentruber's motion to obtain addresses [Docket No. 29].

SO ORDERED.