THE MICHIGAN MUTUAL LIFE INSURANCE CO.
*v.* SHERIDON ET AL.

*Foreclosure — Distribution of proceeds — Priorities — Lessee and subsequent mortgagee — Lessee's compensation determined, how.*

1. A tenant in possession, holding under a valid lease with an implied covenant for the quiet and peaceable enjoyment of the premises, who is deprived of the leasehold estate by foreclosure and sale of the premises, is entitled to be compensated therefor out of the proceeds of sale, and such right is a prior claim to that of mortgagees on liens executed subsequent to the lease.

2. In such case the amount of compensation to which the tenant is entitled is the difference between the rent reserved in the lease and the actual net value of the leasehold estate, the amount thus found to be reduced to its present worth.

(Decided November 18, 1918.)

APPEAL: Court of Appeals for Lucas county.

*Mr. J. A. Barber,* for plaintiff.

*Messrs. Calkins & Storey,* for Robert A. Draper and The Detwiler Real Estate & Investment Company.

*Mr. Warren L. Smith* and *Mr. Thomas L. Gifford,* for Yondota Lodge, Knights of Pythias.

Richards, J.  The real estate involved in this controversy has been sold under foreclosure and the proceeds arising paid into court. This sale was made in September, 1917, for $17,500 to the defendant, Robert A. Draper, and the amount of the first mortgage, together with taxes and costs, has been paid from these proceeds, leaving for distribution the sum of about $5,500. The matter remaining for disposition is the right of various claimants to this money still remaining in the hands of the court.

The facts necessary for a solution of this question are in substance as follows: In 1904, Sanford W. Cook was the owner of the real estate, situated in East Toledo, and he then mortgaged the same to The Michigan Mutual Life Insurance Company for $10,000, his wife, Lottie Cook, joining in the mortgage. Thereafter he conveyed the property to his wife, and in 1912 she entered into a written lease of the property to Yondota Lodge, Knights of Pythias, for a period of five years from June 1, 1912, at $40 per month, with the privilege of renewal for another five-year term at a rental of $50 per month. The Yondota Lodge took possession of the premises and the lease held by it was duly placed on record. In October, 1914, Lottie Cook executed a mortgage on the property to The Walding, Kinnan & Marvin Company, which mortgage was subsequently assigned to the defendant, Robert A. Draper, and there remains still due on the same about $1,000. Thereafter Lottie Cook conveyed the real estate in fee simple, and it passed by mesne conveyances to the defendant, Sheridon, who, in August, 1915, executed a mortgage on the

same to the defendant, The Detwiler Real Estate
& Investment Company, and on this mortgage
there still remains due about the sum of $7,500.
Yondota Lodge claims an equitable interest in the
money remaining in court to the extent of the loss
suffered by it in being deprived of its leasehold in-
terest in the premises by the foreclosure and sale.
The second and third mortgagees claim that they
are entitled to the remaining proceeds and insist
that the lodge has no claim whatever to any part
thereof.  The lease held by the lodge gave it the
right to sublet the premises, which it was doing to
various subtenants through the entire period that
it occupied the premises.  It had elected to retain
the premises for the second period of five years at
the increased rental of $50 per month and was
receiving during all the time large amounts of
rental from its various subtenants.  The terms of
the lease required the landlord to heat the hall
occupied by the lodge and to keep the same in
reasonable and necessary repair.  The lodge on
taking possession under its lease, and with the con-
sent of the landlord, remodeled the room at an
expense exceeding $1,400.  The lease held by the
lodge contains no express covenant, but there is,
of course, the implied covenant that the tenant
would be entitled to the quiet and peaceable enjoy-
ment of the premises during the term of the lease
and for the renewal period provided by the lease.

Counsel for the mortgagees insist that if the
lodge has any claim it would be only against the
original lessor, and that it has no interest in or
lien on the proceeds in court, nor any equitable
right to any portion of the same.  This claim is

based very largely on the decision in *Burr* v. *Stenton et al.,* 52 Barb., 377, and on certain text-books which cite and restate the rule which they assume to be there announced; and it must be admitted that a cursory reading of that case seems to lend much support to the contention so made. A careful study, however, of the case of *Burr* v. *Stenton* shows that it has very decided limitations and must be construed and interpreted in accordance with the peculiar facts existing in the case that the court was then deciding. The lessor in that case was not the owner of the premises at the time he executed the lease, but subsequently became the owner thereof, and the lease which he gave contained an express covenant for the quiet enjoyment of the premises without molestation or disturbance from the lessor, his successors and assigns. There was a mortgage on the premises which had been theretofore made by the former owner. The court held that by reason of the express covenant contained in the lease there was no room for any implied covenant on the same subject-matter, and that as the express covenant was limited by its terms to the acts of the lessor, his successors and assigns, and the mortgage had not been made by the lessor, but by a former owner, therefore there was no covenant either express or implied against the same, and that for this reason, and this reason alone, the tenant was not entitled to share in the proceeds remaining for distribution after the premises had been sold under this antecedent mortgage. The case was affirmed by the court of appeals of New York in *Burr* v. *Stenton,* 43 N. Y., 462. In the course of the

opinion announced by the court of appeals it is stated that the case was considered upon its own merits, leaving a case where there is an express or implied covenant for quiet enjoyment in the lease to be determined when it arises. In the case at bar we have found that there is an implied covenant for quiet enjoyment, and this distinguishes the case from that of *Burr* v. *Stenton, supra.* The case of *Burr* v. *Stenton* has been often cited, and numerous restrictions announced which must be placed upon its application to other cases.

We call attention to *Clarkson* v. *Skidmore, Exr., et al.,* 46 N. Y., 297, where it was held that a lessee for years of mortgaged premises, who holds under a lease containing a covenant of quiet enjoyment, is entitled to receive out of the surplus moneys arising on foreclosure the value of the use of the premises for the remainder of his term, less the rents reserved. The court in the opinion distinguishes this case from *Burr* v. *Stenton* by pointing out that the lease in that case contained no express or implied covenant of quiet enjoyment except against the acts of the lessor. The decision of the lower court in *Clarkson* v. *Skidmore, Exr.,* is found in 2 Lansing, 238, where it is expressly stated that *Burr* v. *Stenton* does not control. It may be noted in passing that the decision of the court of appeals in *Clarkson* v. *Skidmore, Exr.,* was rendered by the same judges who decided the case of *Burr* v. *Stenton.*

The principle that a tenant having the protection of a general covenant for quiet enjoyment is entitled to be compensated out of the proceeds of the sale for the loss he suffers by reason of being

deprived of the rights granted him under the lease is also announced in *Larkin* v. *Misland,* 100 N. Y., 212; in *Winthrop et al., Exrs.,* v. *Welling et al.,* 2 App. Div., 229, and in *Ely* v. *Collins et al.,* 92 N. Y. Supp., 160.

After all these criticisms and limitations on the case of *Burr* v. *Stenton* little remains of that case as an authority, and it can not be applied beyond the peculiar facts under which it arose. It is true that in 2 Jones on Mortgages, Section 1696, the case of *Burr* v. *Stenton* is cited as announcing the doctrine generally that a lessee when his interest is cut off by foreclosure is entitled to no part of the surplus arising from the sale. This principle is so stated in the fourth edition of Jones on Mortgages and the statement is repeated in the sixth and seventh editions of that treatise, and this in spite of the peculiar facts existing in the case of *Burr* v. *Stenton,* which necessarily limit the scope of the decision, and notwithstanding the subsequent limitations put on that case by various decisions already cited rendered by the courts of the same state. The learned author of Jones on Mortgages, however, states in Volume 2, Section 773 (7 ed.), that a lease already existing at the date of the mortgage is in no way invalidated by the giving of the mortgage, and that the lease is a paramount interest and the mortgage subject to it. He also says that the mortgagee has only the rights of the mortgagor as against the lessee. The language is directly applicable to the rights of the second and third mortgagees in the case at bar, and is not consistent with the language used by the author in Section 1696, cited *supra.* Indeed,

on a review of the situation disclosed by the record in this case it is apparent that to adopt the contention of counsel for the mortgagees would be in effect to hold that a subsequent lien is prior to any right of the owner of a pre-existing estate in the premises. The lease held by the Yondota Lodge was on record, and the lessee was in possession, and it necessarily follows that the rights of the subsequent mortgagees are subordinate to the rights of the lessee. We are, therefore, of the opinion that the lessee is entitled to be compensated out of the proceeds remaining in court to the extent of the loss suffered by it in being deprived of the estate created by the lease. This compensation should be represented by a lump sum to be ascertained from the evidence, and reduced to its present worth. The amount of this compensation would be the difference between the amount of rent to be paid by the tenant and the actual net value of the leasehold estate.

No useful purpose would be served by reviewing in detail the evidence relating to the value of this leasehold estate or the rentals received by the Yondota Lodge from its subtenants. It is sufficient to say that the evidence discloses that during the entire period covered by the lease it had been subletting the premises to numerous tenants and had received during the term of the lease large sums of money and that there had been an increase of the amount so received, showing the enhanced value of the same as time passed. This evidence shows that the lodge-room was sublet to these various tenants at an annual rental which amounted to $5 per night for each night that the

tenant occupied the same, the Yondota Lodge reserving one night a week for its own use of the same. The total amount received by the lodge is clearly stated in the evidence. It also appears that the expense of lighting the hall was $100 per year and that janitor service amounted to $240 per year. After taking into consideration all this evidence it is perfectly clear that the lodge had a very valuable lease and has suffered substantial damages, and on the evidence contained in the record we find that the amount of the loss suffered by the lodge is $1,035, which amount is an equitable charge on the fund now in court, and to be first paid therefrom, after the costs of court. The second and third mortgagees are entitled to receive the balance then remaining according to their respective priorities.

*Decree accordingly.*

CHITTENDEN and KINKADE, JJ., concur.