**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2330
_____

TOMOKO FUNAYAMA,
                    Appellant

v.

NICHIA AMERICA CORPORATION;
KUBONIWA SHIGEO

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. Civil Action No. 08-cv-05599)
District Judge:  Honorable Lawrence F. Stengel

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 16, 2012

Before: CHAGARES, VANASKIE and BARRY, Circuit Judges

(Opinion filed: May 17, 2012)
_____

OPINION
_____

PER CURIAM

    Tomoko Funayama, proceeding pro se, appeals an order of the United States

District Court for the Eastern District of Pennsylvania granting summary judgment for

her former employer, Nichia America Corporation, and its President, Shigeo Kuboniwa,

in her employment discrimination action. For the reasons that follow, we will affirm the judgment of the District Court.

Funayama began working for Nichia as a Business Coordinator/Accountant in 1995. She was promoted to the positions of Assistant Financial Manager in 1998 and Financial Manager in 2004. In 2008, Nichia decided to close the Mountville, Pennsylvania office where Funayama worked and to consolidate its operations in Detroit the following year. Kuboniwa initially told Funayama that she would not be transferred to Detroit, but he later offered her a job there. Before the terms of the position had been decided, Funayama began looking for another job. She accepted employment at another company and resigned from Nichia on July 22, 2008.

Funayama claims Nichia discriminated against her based on her gender, age, and Japanese ethnicity in connection with her job offer and retaliated against her for filing discrimination charges. She further contends that Kuboniwa sexually harassed her throughout her employment and subjected her to a hostile work environment. Funayama claims violations of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et seq., the Pennsylvania Human Relations Act, 43 Pa. Stat. §§ 951 et seq., and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.

Following discovery, Nichia moved for summary judgment on Funayama's claims. The District Court granted the motion and this appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our standard of review is plenary. Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000).

2

As recognized by the District Court, Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). "Hostile work environment harassment occurs when unwelcome sexual conduct unreasonably interferes with a person's performance or creates an intimidating, hostile, or offensive working environment." Weston v. Pennsylvania, 251 F.3d 420, 425-26 (3d Cir. 2001) (citing Meritor Savs. Bank FSB v. Vinson, 477 U.S. 57, 65 (1986)). The harassment must be so severe or pervasive that it changes the conditions of employment and creates an abusive environment. Id. at 426.

As discussed in further detail in the District Court's decision, Funayama testified that Kuboniwa, among other things, made sexual advances towards her outside the office in 1999, suggested they share a room on a business trip in 2001, gave her a sexually explicit book in 2003 and a sexually explicit magazine in 2007, and made a comment about her body in 2008. Funayama also stated that Kuboniwa asked to go to her apartment for a drink many times from 1999 until 2003, when on the advice of a human resources employee, she clearly declined an invitation. Funayama further testified that Kuboniwa had touched her on the back and side of her body during the period from 2003 to 2008.

The District Court considered the totality of these circumstances, including the frequency of the conduct, whether it was physically threatening or humiliating or simply

3

offensive, and whether it unreasonably interfered with Funayama's work performance. See id. (noting factors that are considered to determine if an environment is hostile or abusive). The District Court concluded that Funayama failed to show that she suffered severe and pervasive harassment creating an objectively abusive working environment. We agree.

The handful of incidents Funayama states occurred from 1999 until 2003 were not sufficiently severe or frequent to support a hostile work environment claim. The only ongoing conduct Funayama advanced in support of her claim were Kuboniwa's invitations to go out with him, which stopped in 2003 once she clearly declined them, and his touching of her back and side, which Funayama did not find overly offensive at the time. Funayama did not testify that these incidents had any effect on her work and, as noted by the District Court, she stated that sexual harassment was not the reason she resigned. Funayama has not shown that the District Court erred in granting summary judgment for the defendants on this claim.[1]

Funayama also challenges the District Court's grant of summary judgment on her other discrimination claims. The District Court properly applied the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, Funayama was required to establish a prima facie case of discrimination

_____

[1]Nichia and Kuboniwa also assert in their brief that Funayama's hostile work environment claim is time-barred. Because the incidents Funayama described are insufficient to establish a hostile work environment claim, we need not decide the timeliness of her claim.

4

by showing:  (1) she is a member of a protected class; (2) she was qualified for the position she sought to attain or retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that give rise to an unlawful inference of discrimination.  See Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410-11 (3d Cir. 1999).

The District Court concluded that Funayama failed to establish a prima facie case of discrimination because she had not shown that she suffered an adverse employment action.  The District Court explained that Funayama did not provide evidence showing that the position she would assume in Detroit so materially altered her benefits or duties that it could be characterized as adverse.  Rather, the District Court found that Funayama was initially dissatisfied with Nichia's failure to answer her questions about the structure of the new department in Detroit and later with being given essentially the same duties she had in Pennsylvania.

The record reflects that Kuboniwa initially planned to transfer Funayama's supervisor, Tim Ujike, to Detroit for a temporary period of time after which he would work for Nichia in Japan.  On May 7, 2008, Kuboniwa told Funayama that she would not be transferred to Detroit.  Funayama testified at her deposition that Kuboniwa further told her that Nichia's Detroit location did not want Japanese individuals to work there and that a young, white, male accountant she supervised, Brian Marshall, would ultimately head up the accounting department.

5

Several weeks later, however, Ujike resigned and, on May 28, 2008, Kuboniwa offered Funayama a position in Detroit. Kuboniwa testified that he did not know at this time how the accounting department would be structured except that it had been decided that the department would be reduced from five persons to three. Brian Marshall was offered a position in Detroit in June 2008.

At a June 25, 2008, meeting, Kuboniwa showed Marshall and Funayama a chart reflecting the accounting assignments each would assume after Ujike's departure. As recognized by the District Court, the chart reflects that ten of Funayama's duties would remain the same and that she would assume one duty that Ujike had performed. In addition, Marshall would assume one of Funayama's duties and share one of her duties. Funayama also would share with Marshall two duties she had shared with Ujike. Funayama viewed these changes as a demotion and believed that her job would become clerical in nature.

The chart does not reflect a substantial change in Funayama's assignments and Funayama points to no other evidence supporting the conclusion that there would be a qualitative change in her position.[2] Absent such evidence, we agree with the District Court that, once Funayama was offered a position in Detroit, there was no longer an adverse employment action supporting a prima facie case of discrimination. See Storey

---

[2]There is conflicting evidence as to whether Funayama would continue to supervise Marshall. Funayama testified she would not but Kuboniwa testified that the reporting structure had yet to be determined.

6

v. Burns Int'l Sec. Serv., 390 F.3d 760, 764 (3d Cir. 2004) (stating an adverse

employment action requires an action by an employer that is "serious and tangible

enough to alter an employee's compensation, terms, conditions, or privileges of

employment").[3]

We further agree, for substantially the reasons stated by the District Court, that

summary judgment was warranted on Funayama's retaliation and constructive discharge

claims. Funayama has not shown any error on the part of the District Court.

Accordingly, we will affirm the judgment of the District Court.[4]

---

[3]We recognize that the chart reflects that Marshall would assume the majority of Ujike's duties when he resigned. Funayama, however, does not contend in her brief that she should have been assigned Ujike's duties nor does she develop an argument that she suffered an adverse employment action based on changes in Marshall's position.

[4]Funayama's motion for leave to attach a translator's report in the supplemental appendix accompanying her reply brief is denied. Funayama's motion is also construed as a motion to file the supplemental appendix accompanying her reply brief and, so construed, is granted.