NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1771
_____

TAMEKA BARNES,
                                        Appellant

v.

NATIONWIDE MUTUAL INSURANCE COMPANY;
VICTOR M. VERBEKE, Esquire
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-13-cv-02438)
District Judge:  Hon. Anita B. Brody
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 21, 2015

Before:  FISHER, JORDAN, and GREENAWAY, JR., *Circuit Judges*.

(Filed: January 23, 2015)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Tameka Barnes challenges the District Court's entry of summary judgment against

her on claims she brought pursuant to 42 U.S.C. § 1981 and the Pennsylvania Human

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

Relations Act ("PHRA"). She specifically argues that she can establish a prima facie case of disparate treatment based on her race because, contrary to the District Court's conclusion, she suffered an adverse employment action. Because the District Court's ruling about a lack of adverse employment action was correct, we will affirm.

## I.      Background

### A.      Employment Overview

In 2002, Nationwide Mutual Insurance Company ("Nationwide") hired Barnes, who is an African American woman, as an office manager at one of its offices in Philadelphia, Pennsylvania. In October 2005, she applied for a position as a legal secretary in Nationwide's Trial Division Office in Philadelphia. She was given that position. Barnes testified at her deposition that she received favorable performance evaluations and appropriate bonuses and raises throughout her time as a legal secretary in the Philadelphia office. In December 2007, she transferred to a legal secretary position at Nationwide's Conshohocken, Pennsylvania, office. Again, she testified that she received favorable performance evaluations and appropriate raises and bonuses throughout her time there. In November 2012, Barnes applied for a position as a legal secretary at Nationwide's Trial Division Office in Harleysville, Pennsylvania. Her application was successful, and she received a $2,500 raise. Barnes is still employed as a legal secretary at Nationwide's Harleysville office.

**B.     Barnes's 2009 Internal Complaint**

On May 12, 2009, Barnes filed a complaint with Nationwide's Office of Associate Relations ("OAR"),[1] alleging that Victor Verbeke, the managing attorney of Nationwide's Conshohocken office, treated her unfairly because of her race. Specifically, Barnes alleged that Verbeke was "lax with all the associates, except for her," that she was the only associate required to monitor the front desk, and that she had heard from an anonymous source that Verbeke was watching her and was "trying to create a paper trail" that would justify adverse action against her. (App. at 340a.) OAR promptly investigated Barnes's complaint, and as part of its investigation, it interviewed Adrienne Oliphant (Barnes's direct supervisor), Jeannette Burns-Young (another African American legal secretary in the Conshohocken office), Donna DiPietro (one of Barnes's assigned attorneys), Verbeke, and Jesse Searfross (another of Barnes's assigned attorneys). At the conclusion of its investigation, OAR determined that there was no evidence to support Barnes's claim that Verbeke targeted her because of her race or gender.

**C.     Barnes's 2010 EEOC Complaint**

On October 4, 2010, Barnes filed a charge of race and gender discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that, after returning from a leave of absence, she was notified that she was under investigation for "allegedly accepting vendor gift cards" and for having non-work related documents on her

---

[1] "Associate" is evidently a term used within Nationwide as a synonym for "employee."

3

computer. (Barnes Br. at 9.) She also alleged that Verbeke had harassed her since 2008 in the following ways: (1) he routinely reviewed and pulled files from her computer in an attempt to locate non-work related documents, which he did not do with other associates' computers; (2) he eavesdropped on her phone conversations, which he did not do with other associates; and (3) he would send emails to Oliphant regarding Barnes's arrival and departure times in hopes of initiating disciplinary action.

After an investigation, the EEOC decided not to pursue Barnes's matter further and sent her a right-to-sue letter. The EEOC specifically explained that, as to the allegation about vendor gift cards, an internal investigation by Nationwide had concluded that Barnes did not accept or use gift cards from outside vendors. And, as to Barnes's allegation that Verbeke improperly accessed her computer and eavesdropped on her phone calls, the EEOC noted that Nationwide regularly reminded employees that company computers and telephones are subject to remote access and monitoring.

### D. Barnes's 2012 Internal Complaint

In 2012, Barnes filed another complaint with OAR. The complaint was investigated, and OAR concluded that the complaint involved claims that had already been investigated during the previous internal complaint.

### E. Barnes's 2013 Lawsuit

On May 1, 2013, Barnes filed a complaint in the United States District Court for the Eastern District of Pennsylvania, alleging race discrimination claims under 42 U.S.C. § 1981 and the PHRA. She named Nationwide and Verbeke as defendants. In her complaint, she alleged that Verbeke discriminated against her due to her race in the ways

4

previously alleged in her EEOC complaint. She further alleged that, in addition to sending emails to Oliphant about her arrival and departure times, Verbeke also sent emails alleging she had made work-related errors. Barnes said that Verbeke did not scrutinize white employees in the same way that he scrutinized black employees and that he had targeted other black employees on two previous occasions.

On February 27, 2014, the District Court granted summary judgment against Barnes. It reasoned that Barnes's race discrimination claim failed as a matter of law because none of the alleged wrongs that she suffered as a result of Verbeke's conduct resulted in disciplinary action, negative performance reviews, changes in employment status, or any other adverse employment action. To the contrary, the District Court observed that Barnes continuously received favorable evaluations, bonuses, and raises during her employment at Nationwide. As a result, the Court concluded that Barnes had not suffered an adverse employment action. Barnes timely appealed.

## II.    Discussion[2]

As noted above, Barnes argues that she suffered an adverse employment action and that, as a result, the District Court incorrectly held that her discrimination claim failed as a matter of law. Her argument is unpersuasive.

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's grant of summary judgment de novo and "view inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party." *Montanez v. Thompson*, 603 F.3d 243, 248 (3d Cir. 2010) (internal quotation marks omitted). Summary judgment is appropriate where the court is satisfied that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The parties agree that the *McDonnell Douglas* burden-shifting framework applies to Barnes's race discrimination claims. Under that framework, Barnes must establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If she succeeds, the burden shifts to the defendants to articulate some legitimate, non-discriminatory reason for their actions. *Id*. If the defendants succeed, then Barnes must prove by a preponderance of the evidence that the defendants' purported legitimate reason is a mere pretext. *Id*. at 804.

To establish a prima facie case of discrimination under section 1981 or the PHRA, Barnes must show that: "(1) [she] is a member of a protected class; (2) [she] was qualified for the position [she] sought to attain or retain; (3) [she] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (Title VII); *Brown v. J. KAZ, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009) ("[T]he substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII."); *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 409 (3d Cir. 1999) (noting that the same legal standard applies to Title VII and PHRA claims).[3] Because the District Court concluded that Barnes failed to show that she suffered an adverse employment action, that issue is the focus of her appeal.

---

[3] Because the standard for addressing a section 1981 claim is the same as the standard used to address a PHRA claim, the discussion of Barnes's section 1981 claim simultaneously addresses her PHRA claim and no further analysis of the latter is required.

The phrase "adverse employment action" is linked to Title VII's description of employment actions that may not be based on an employee's race. Title VII makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Section 1981 similarly protects "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," including an employment contract. 42 U.S.C. § 1981. Title VII and section 1981, therefore, do not provide relief for general unpleasantness that can occur in the workplace, even if that unpleasantness may be motivated by racial animus. Rather, those statutes provide relief only if discrimination is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (internal quotation marks and citations omitted) (applying Title VII); *see also Thompson v. City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir. 2014) (applying section 1981).

Termination, failure to promote, and failure to hire all constitute adverse employment actions. *See* 42 U.S.C. § 2000e-2(a)(1) (making it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."). Similarly, actions that reduce opportunities for promotion or professional growth can constitute adverse employment actions. *See de la Cruz v. N.Y.C. Human Res.*

7

*Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 21 (2d Cir. 1996) (stating that reduced prestige and opportunity for professional growth, although "quite thin," are sufficient to show adverse employment action at summary judgment). Employment actions such as lateral transfers and changes of title or reporting relationships have generally been held not to constitute adverse employment actions. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (collecting cases stating that a "bruised ego;" a demotion without change in pay, benefits, duties, or prestige; and a reassignment to a more inconvenient job did not constitute adverse employment actions) (internal quotation marks omitted); *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (stating that delay in reassignment, transfer to purportedly inferior facilities, and change in the type of students taught are not adverse employment actions); *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 456 (7th Cir. 1994) (concluding that changes to title and reporting relationship are not adverse employment actions where plaintiff retained same grade level, benefits, and responsibility).

Barnes advances two arguments in her attempt to establish that she suffered an adverse employment action. First, she argues that Verbeke subjected her to "disciplinary accusations," and that such conduct constitutes an adverse employment action. (Barnes Br. at 23-25.) She says that, "[g]iven the sheer amount of disciplinary accusations" leveled against her by Verbeke, "it is simply of no moment that Defendants[] 'abstained' from issuing formal discipline." (*Id*. at 24 (emphasis omitted).) And she also says that "[t]here comes a point where the sheer number of meritless issues raised about an employee's performance, even if they do not result in discipline, must be considered

8

sufficient to constitute an adverse employment action." (*Id*. at 24-25 (emphasis omitted).)

But regardless of whether "disciplinary accusations" can alter the conditions of an employment contract for purposes of section 1981 – and we make no comment on that assertion – the District Court rightly concluded that none of the "disciplinary accusations" in this case constituted adverse employment actions. Section 1981 does not grant federal courts the power to enforce good manners and proper etiquette in the workplace; instead, it provides an avenue for employees to seek redress for significant violations of civil rights. Barnes simply has not suffered a cognizable deprivation during her employment at Nationwide under either section 1981 or the PHRA. Her brief confirms as much when she acknowledges that, during her time in Conshohocken, she received "overall favorable evaluations" and "appropriate raises and bonuses;" she "did not receive any type of discipline, demotion, decrease in salary, written warning[;] nor was she placed on a performance improvement plan." (Barnes Br. at 7.) Bullying or discrimination of any kind in the workplace is wrong, but not every wrong is a violation of federal law.

Barnes next argues that "[a]ny questions as to whether Verbeke's actions were done with discriminatory animus were disputes of material fact for trial" because "[a] reasonable jury could have concluded that [she] was targeted by Verbeke on the basis of her race and that Nationwide is vicariously liable for [Verbeke's] actions[.]" (*Id*. at 13, 24.) That argument also fails. Assuming that Verbeke treated Barnes less than respectfully on account of her race, her claimed injury is not redressable under section

9

1981 unless she suffered an adverse employment action. Absent such an action, Verbeke's motivation for targeting her, no matter how odious, is legally irrelevant.

## III.    Conclusion

For the reasons noted, we will affirm the judgment of the District Court.