**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 22-2943 & 22-2944
_____

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION;
DEMETRIUS FORD

v.

CENTER ONE, LLC; CAPITAL MANAGEMENT SERVICES, LP

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant in 22-2943
DEMETRIUS FORD, Intervenor Appellant in 22-2944

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-19-cv-01242)
District Court Judge: Honorable Christy C. Wiegand

_____

Argued September 27, 2023

Before:  KRAUSE, ROTH, and AMBRO, *Circuit Judges*.

(Filed: February 1, 2024)

Georgina Yeomans [ARGUED]
Equal Employment Opportunity Commission
Office of General Counsel
131 M Street NE
Washington, DC 20507
          *Counsel for Appellant*

Zeba A. Huq [ARGUED]
James A. Sonne
Stanford Law School
Religious Liberty Clinic
559 Nathan Abbot Way

Stanford, CA 94305

*Counsel for Intervenor-Appellant*

Emily E. Mahler  [ARGUED]
Margolis Edelstein
535 Smithfield Street
Suite 1100
Pittsburgh, PA 15222
*Counsel for Appellees*

_____

**OPINION**

_____

KRAUSE, *Circuit Judge*

The District Court in this case determined that Appellant, the Equal Employment Opportunity Commission (EEOC), and Intervenor-Appellant, Demetrius Ford, failed to establish a prima facie case of religious discrimination under Title VII, 42 U.S.C. § 2000e–2(a)(1), because Ford did not suffer an adverse employment action.  Specifically, the Court concluded that: (1) the mere accrual of attendance points did not qualify as an adverse action; and (2) Ford was not constructively discharged.  Because we conclude that Ford's constructive discharge theory raises genuine disputes of material fact that a

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

2

reasonable jury could resolve differently, we will vacate the District Court's grant of summary judgment and remand.

## I.    DISCUSSION[1]

To establish a prima facie case of religious discrimination under Title VII, an employee must show: (1) that he holds a sincere religious belief that conflicts with a job requirement; (2) that he informed his employer of the conflict; and (3) that he suffered an adverse employment action for failing to comply with the conflicting requirement.[2] *Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009).  Before the District Court, the parties put forth conflicting evidence on all three elements,[3] but this appeal

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e–5(f)(3), and we have appellate jurisdiction under 28 U.S.C. § 1291.  We review a district court's entry of summary judgment de novo. *Ellis v. Westinghouse Elec. Co.*, 11 F.4th 221, 229 (3d Cir. 2021).  Summary judgment is appropriate only if, viewing the record in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted).

[2] If the employee successfully puts forth a prima facie case of religious discrimination, "the burden shifts to the employer to show either it made a good-faith effort to reasonably accommodate the religious belief, or such an accommodation would work an undue hardship upon the employer and its business."  *Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009).

[3] The District Court did not need to reach the questions of whether Ford was a sincere practitioner of Messianic Judaism or whether he adequately informed the company of his religious conflicts because the Court determined that Ford did not suffer any adverse employment action.  On appeal, however, Center One argues that its request for an official clergy letter was justified because it had a reasonable basis to doubt the sincerity of Ford's religious beliefs and because the company needed additional information to ascertain what accommodations Ford required.  In support of these contentions, Center One points to portions of Ford's deposition in which he expressed uncertainty about

3

focuses on the central element on which the District Court ruled: whether Ford suffered an adverse employment action.  The EEOC posits two such actions: Center One's assignment to Ford of demeritorious attendance points, and his alleged constructive discharge.  We address each below.

First, the District Court correctly concluded that Center One's assignment of points did not qualify as an adverse employment action.  An adverse employment action must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment."  *Storey v. Burns Intern. Security Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)).  Here, however, Ford himself acknowledged he did not suffer a concrete consequence because of the points he accrued, such as a demotion or a reduction in pay.  This treatment was consistent with Center One's official attendance policy, which provided that an employee *could* be terminated if he accrued enough points but did not require any form of discipline.  Thus, although Ford himself accrued more than enough points to be terminated or suspended, the company took no such action.

The EEOC's constructive discharge theory, on the other hand, presents a closer issue.  An employee who has been constructively discharged has suffered an adverse employment action even though he was not actually terminated.  *See Wiest v. Tyco*

---

which religious holidays his faith required him to observe.  In response, the EEOC and Ford argue that Center One employees did not doubt the sincerity of his beliefs in 2016, and point out that Center One's representatives agreed that the documents Ford provided were sufficient to notify them of his religious obligations.  These conflicts exemplify the genuine factual disputes that exist in this case.

*Electronics Corp.*, 812 F.3d 319, 331 (3d Cir. 2016). A constructive discharge occurs when an employer "knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (quoting *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996)). The employee must face conditions that would be intolerable to "an objectively reasonable person," as "an employee's subjective perceptions of unfairness or harshness do not govern a claim of constructive discharge." *Mandel*, 706 F.3d at 168, 169.

Viewing all genuinely disputed material facts in the light most favorable to the EEOC, a reasonable jury could find that Ford was constructively discharged because the conditions of his employment had become "intolerable." The record reflects that, when Ford asked Human Resources to rescind the three attendance points he had been assigned for missing work to observe Rosh Hashanah,[4] he was told that Center One could not accommodate his religious obligations without "a letter from [his] Congregation with an official letterhead explaining the days and times [he] need[s] off." J.A. 528. After he informed the company that he was unable to obtain such a letter because he was in the process of finding a new congregation, Center One still declined to excuse his religious absences without "documentation with an official letterhead." J.A. 431. Ford then provided the company with his e-mail exchange with the leader of a new congregation, as

---

[4] While Center One asserts that Ford did not notify anyone that he would need to miss work for Rosh Hashanah, he maintains that he informed the company of his absence "[o]ne or two days" in advance of the holiday. J.A. 498.

5

well as a calendar of holy days the congregation would observe. But even though the company's HR employees agreed that these documents gave them sufficient notice of the dates when Ford would need to take religious absences, Center One persisted in refusing to excuse his prior or future religious absences without an official clergy letter.

Notably, this insistence on official clergy verification was at odds with the EEOC's Guidance on religious discrimination, as well as our precedent. According to that Guidance, while "written materials or the employee's own first-hand explanation may be sufficient to alleviate the employer's doubts about the sincerity or religious nature of the employee's professed belief," such documentation "does not have to come from a clergy member or fellow congregant." EEOC Compliance Manual § 12-IV(A)(2) (Jan. 15, 2021); *see also Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 n.27 (3d Cir. 2017) ("A letter from a clergy-person is not the only way to demonstrate that one holds a religious belief.").

With the parties unable to reach a resolution after several days, the company required Ford to attend an Employment Review Committee (ERC) meeting to discuss his absences. Inexplicably, it scheduled that meeting for Yom Kippur, a day that Center One knew to be a high holy day in Ford's faith. What transpired at that meeting is in dispute. As the District Court noted, Ford paints a much more adversarial picture than does Center One. According to Ford, the company's representatives opened the meeting by asking, "Well, this is a High Holy Day, why are you here?" J.A. 451. And from there, the tone of the meeting deteriorated to the point that Ford asked whether he needed to have a lawyer present. Center One, on the other hand, asserts that no one at the meeting actually

6

threatened Ford with termination, and that its employees were only trying to impress upon Ford the importance of regular attendance.

Disputed facts aside, it is undisputed that scheduling a mandatory meeting on an employee's religious holiday itself "delivers the message that the religious observer is not welcome at the place of employment," *Abramson v. William Paterson Coll.*, 260 F.3d 265, 290 (3d Cir. 2001) (Alito, J., concurring) (citation omitted), and that Ford left the meeting with the understanding that he would be terminated if he missed work again without an official clergy letter.

In these circumstances, and viewing the record in the light most favorable to Ford, a reasonable jury could conclude that his understanding was reasonable and was not based solely on a "subjective perception[] of unfairness or harshness." *Mandel*, 706 F.3d at 169-70. Indeed, Center One's own employees confirmed that, as a practical matter, an employee in Ford's position would be terminated if he continued to accrue attendance infractions after his ERC meeting. And when Ford tendered his resignation with the explanation that he was unable to obtain an official clergy letter, his resignation was accepted without any suggestion that the letter was not a condition of continued employment with accommodation of his religious absences. To the contrary, the company's internal memorandum documented that he was resigning because he "could not provide proper documentation." J.A. 647.

The doctrine of constructive discharge does not require an employee who is seeking religious accommodation to either violate the tenets of his faith or suffer the

indignity and emotional discomfort of awaiting his inevitable termination.[5] As the EEOC's counsel put it at oral argument, "the whole point of the constructive discharge theory[] is [that] an employee doesn't have to wait around to actually be fired." Oral Arg. Tr. 17:16-18. Instead, "they can preserve their dignity and, in Mr. Ford's case, honor his faith and avoid the mark of a termination on his record by resigning." *Id.*

In sum, taking these facts in the light most favorable to the EEOC, a reasonable jury could find that Ford reasonably felt compelled to resign as a result of "intolerable" conditions of discrimination at Center One. *Mandel*, 706 F.3d at 169. While we take no position on whether the EEOC and Ford will ultimately prevail on this (or any other) issue, we conclude that the genuine disputes of material fact in this case preclude resolution by summary judgment.

## II. Conclusion

For the foregoing reasons, we will vacate the judgment of the District Court and remand for further proceedings consistent with this opinion.

---

[5] The EEOC urges us to adopt a "Hobson's Choice" theory of constructive discharge, under which an employee is constructively discharged if his employer forces him to choose between his religious obligations and his continued employment. According to the EEOC, two Courts of Appeals have recognized this theory of constructive discharge. *See EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 142–43 (4th Cir. 2017); *Young v. Sw. Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975). We see no need, however, to recognize a new theory of constructive discharge, as the alleged "Hobson's Choice" in this case appears to be simply another species of intolerability.