NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1855
_____

SHIRLEY E. WALKER,
Appellant

v.

CENTOCOR ORTHO BIOTECH, INC.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-11-cv-04917)
District Judge: Hon. Lawrence F. Stengel
_____

Submitted Under Third Circuit LAR 34.1(a)
February 13, 2014
_____

Before: CHAGARES, SHWARTZ, and GARTH, Circuit Judges.

(Filed: February 19, 2014)
_____

OPINION
_____

SHWARTZ, <u>Circuit Judge</u>.

Shirley Walker ("Walker") brought this employment discrimination claim against Centocor Ortho Biotech, Inc. ("Centocor"),[1] and now appeals the District Court's orders denying discovery-related requests and granting summary judgment in favor of Centocor. We will affirm.

I

As we write principally for the benefit of the parties, we recite only the essential facts and procedural history. Walker, an African-American woman, worked as a Senior District Manager for Centocor's dermatological business in the Midwest. Beginning in 2008, she reported to Dave Gelfuso ("Gelfuso"), the Regional Business Director. In December 2008, Walker filed an internal complaint of race discrimination with Anita Tinney ("Tinney") in Centocor's Employee Relations Group. Specifically, she complained about Gelfuso's allegedly racially-motivated: (1) attempt to redraw the region Walker oversaw; (2) allocation of launch programs to a different team; (3) delayed processing of two of Walker's expense reports and the resulting credit card penalties; (4) negative and unfair feedback process, particularly with respect to another African-American manager; and (5) negative reaction to a product promotion event Walker had helped organize. The internal investigation found that her accusation of racial discrimination was not substantiated, but that Gelfuso: (1) took longer to approve

---

[1] Centocor is now named Janssen Biotech, Inc., and is a subsidiary of Johnson & Johnson.

Walker's expense reports than those of other managers; (2) failed to support her in resolving budget and sales issues; and (3) apparently had a negative impact on women and people of color. The investigator suggested, and Gelfuso received, diversity coaching, but did not find he acted with "inappropriate <u>intent</u> against" such groups. App. 221. Walker alleges that actions were thereafter taken in retaliation for her filing of her internal complaint, namely, movement of her accounts, resulting in lower sales ratings, a requirement that she use her car instead of a train for business travel, and a lack of support in her management of her subordinates.

Walker filed this lawsuit against Centocor, alleging racial discrimination, retaliation, and hostile work environment[2] claims under 42 U.S.C. § 1981.[3] During the pretrial phase, the District Court issued orders denying Walker's motions for the production of documents relating to non-racial discrimination complaints against Gelfuso, depositions of four Centocor employees Gelfuso directly or indirectly supervised, and an extension of the discovery deadline for Walker to depose Tinney. The District Court granted Centocor's motion for summary judgment. Walker appeals the District Court's orders granting summary judgment and denying her discovery-related requests.

---

[2] The District Court found that Walker had waived her hostile work environment claim at the summary judgment stage and she does not appeal that ruling.

[3] Section 1981 provides, "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."

II

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction

pursuant to 28 U.S.C. § 1291. This Court's "review of the grant or denial of summary

judgment is plenary . . . ." Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418

(3d Cir. 2013). Summary judgment is appropriate where "there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). We apply the same standard the District Court applied, viewing facts and

making reasonable inferences in the non-moving party's favor. Hugh v. Butler Cnty.

Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005).

III

A

Walker's § 1981 discrimination claim is governed by the burden-shifting

framework explained in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its

elements are generally identical to those of a Title VII claim. See Patterson v. McLean

Credit Union, 491 U.S. 164, 186 (1989); Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d

Cir. 2009). Thus, to establish a prima facie case of discrimination under § 1981, Walker

must show that: (1) she is a member of a protected class; (2) she satisfactorily performed

her required duties; (3) she suffered an adverse employment action; and (4) the adverse

employment action occurred "under circumstances that raise an inference of

discriminatory action . . . ."  Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003).

The parties do not dispute that Walker is a member of a protected class, and Centocor does not argue that her job performance was unsatisfactory.

We next examine whether the facts viewed in Walker's favor show she suffered an adverse employment action.  The phrase "adverse employment action" paraphrases Title VII's description of the type of employment actions that may not occur as a result of employment discrimination.  The statute makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1); see Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004).  Title VII and § 1981 thus do not provide relief for unpleasantness that may be encountered in the work place.  Rather, they provide a remedy only if discrimination seriously and tangibly altered the employee's ability to perform the job or impacted the employee's job benefits.  Storey, 390 F.3d at 764 (an "adverse employment action" must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment" (internal quotation marks omitted)); see also Connors v. Chrysler Fin. Corp., 160 F.3d 971, 973-74 (3d Cir. 1998) (discrimination claim fails absent proof of an adverse employment action).

Termination, failure to promote, and failure to hire all constitute adverse job actions.  42 U.S.C. § 2000e-2(a)(1).  Similarly, actions that reduce opportunities for

promotion or professional growth can constitute adverse employment actions. Storey, 390 F.3d at 764 (denial of promotion); de la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs., 82 F.3d 16, 21 (2d Cir. 1996) (reduced prestige and opportunity for professional growth, although "quite thin," sufficient to show adverse employment action at summary judgment); Torre v. Casio, Inc., 42 F.3d 825, 831 n.7 (3d Cir. 1994) (material fact issue exists as to whether plaintiff "was transferred . . . to a dead-end job that had effectively been eliminated before he was transferred to it" even though his pay and benefits were unchanged). Employment actions such as lateral transfers and changes of title or reporting relationships have generally been held not to constitute adverse employment actions. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998) (noting that a "bruised ego," a demotion without change in pay, benefits, duties, or prestige, and a reassignment to a more inconvenient job did not constitute adverse employment actions); Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (delay in reassignment, transfer to purportedly inferior facilities, and change in the type of students taught are not adverse employment actions); Flaherty v. Gas Research Inst., 31 F.3d 451, 456 (7th Cir. 1994) (changes to title and reporting relationship not adverse employment actions where plaintiff retained same grade level, benefits, and responsibility).

Walker asserts that the following nine events constitute adverse employment actions: (1) Gelfuso's allegedly negative performance review that Walker contends affected her compensation; (2) Gelfuso's delays in approving expense reports; (3) Gelfuso's attempted realignment of Walker's sales territory in an effort to cause another

6

African-American sales representative to join her team; (4) Gelfuso's assignment of drug launch programs to a white manager; (5) Gelfuso's expression of dislike for another African-American sales representative; (6) Gelfuso's failure to provide a budget report to Walker; (7) Gelfuso's questioning of Walker's hiring of a "minority transfer candidate"; (8) Gelfuso's requirement that Walker use a car rather than a train for some business travel; and (9) Gelfuso's failure to provide Walker support in her management of three subordinates.[4]

None of these events constitute adverse employment actions, so summary judgment on Walker's discrimination claim was appropriate. A negative evaluation, by itself, is not an adverse employment action, see Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001) (holding written reprimands placed in plaintiff's personnel file were not adverse employment actions because they had not effected a "material change in the terms or conditions of his employment"), and here Walker concedes that her numerical ratings remained the same as they had been under her previous supervisor, that her ratings were higher than for some other white managers, and that she received raises each year she worked for Gelfuso. Thus, the record does not support the conclusory description she affixes to the evaluation, and she has offered no evidence to support a finding that her conditions of employment were impacted by it.

--------

[4] The District Court noted that Walker had failed to mention the first event in her complaint and held that she had waived any argument that the latter eight events constituted adverse employment actions by not discussing them in her opposition to Centocor's motion for summary judgment. Even assuming they were not waived, none constitute adverse employment actions.

7

The remaining eight events also do not constitute adverse employment actions. Some of the events never actually had any tangible impact on Walker's employment. Specifically, the attempted realignment of Walker's territory did not occur, Gelfuso's expression of dislike for someone else, without more, could not have had an adverse effect on Walker's employment, and Gelfuso did not stop Walker from hiring the minority candidate. Some of the events she identified were not directed at Walker alone, suggesting that, even assuming they were adverse employment actions, there are no facts from which a reasonable fact-finder could find they were motivated by discriminatory animus. Specifically, Gelfuso did not provide the budget report to Walker or to any other manager and the train travel policy was not directed specifically at Walker. The remaining three incidents—the delayed expense reports, the assignment of drug launch programs to a white manager, and the failure to support Walker's management of three of her direct reports—were certainly frustrating, but Walker produced no evidence showing they tangibly altered her conditions of employment. Accordingly, summary judgment on Walker's discrimination claim was appropriate.

B

To succeed on her claim for retaliation, Walker must show that: (1) she engaged in protected activity; (2) Centocor took an adverse employment action against her; and (3) there was a causal connection between the protected activity and the adverse employment action. See Estate of Oliva v. New Jersey, 604 F.3d 788, 798 (3d Cir. 2010). For the purpose of a retaliation claim, an adverse employment action is one that "well might have

8

dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks omitted) (explaining that employees reporting discriminatory behavior are not "immunize[d] . . . from those petty slights or minor annoyances that often take place at work and that all employees experience").

Here, although the parties agree that Walker meets the first prong, as the filing of her internal complaint constituted protected activity, they dispute the second and third prongs. As to the second prong, which requires a showing that Centocor took an adverse employment action, Walker specifically alleges that the following adverse actions took place in retaliation for her internal complaint: (1) movement of accounts; (2) requiring that she use her car for certain business travel; and (3) failing to support her management of her subordinates. Even under the more expansive definition of "adverse employment action" relevant to our retaliation inquiry, see id., as explained above, the latter two actions were not adverse. As for the first action, account movement, which Walker alleges negatively affected her sales results, Walker concedes that she does not know who was responsible for this activity and that it was promptly corrected, restoring her internal sales ranking, and thus did not adversely affect her conditions of employment. Because she has not provided proof of an adverse employment action after she filed her internal complaint, the District Court properly granted summary judgment in Centocor's favor on Walker's retaliation claim.

C

Walker's challenges to the discovery orders also fail. We review the District Court's discovery orders for abuse of discretion, and we will not disturb them "absent a showing of actual or substantial prejudice." Washington v. Hovensa LLC, 652 F.3d 340, 348 n.6 (3d Cir. 2011). Our review of the District Court's management of discovery is highly deferential, requiring a party who was denied additional discovery to demonstrate a consequent denial of access to "crucial evidence" and an inability to have conducted "more diligent discovery" within the confines of the District Court's case management orders. Gallas v. Supreme Court of Pa., 211 F.3d 760, 778 (3d Cir. 2000) (internal quotation marks omitted); Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1034 (3d Cir. 1997). We cannot conclude that the District Court abused its discretion by denying Walker's motions for additional discovery.

The District Court did not abuse its discretion in denying Walker's requests for documents related to complaints against Gelfuso based on accusations other than racial discrimination and for depositions of four individuals to investigate issues they may have had with Gelfuso's supervision. As to the request for documents relating to non-racial discriminaton complaints against Gelfuso, we have previously held that it is not an abuse of discretion for a District Court to limit an investigation of disability discrimination by excluding information relating to racial discrimination. EEOC v. Kronos Inc., 620 F.3d 287, 301-02 (3d Cir. 2010). We similarly conclude here that the District Court properly

10

exercised its discretion by denying Walker's request to investigate complaints that did not appear to be based on allegations of racial discrimination.

The District Court also acted within its discretion to refuse to permit the four depositions. Although Walker argued that three of the individuals she sought to depose were also under Gelfuso's supervision and had also filed internal complaints about him, she has not shown that these complaints were also based on racial discrimination. As stated above, the District Court had discretion to limit discovery of complaints of past discrimination to the type Walker alleged. As to the fourth individual she sought to depose, Bruce Johnson, Walker argues that he was encouraged by Gelfuso to file an internal complaint against her. While the record shows Johnson and Walker filed complaints against each other, the record, including Walker's deposition, does not show Gelfuso encouraged Johnson to file the complaint. Because Walker has not shown she was denied crucial evidence by being barred from deposing these individuals, we cannot conclude that the District Court abused its discretion.

As to Walker's request to extend the discovery deadline to depose Tinney, the District Court appropriately exercised its discretion to deny this request. To obtain an extension of a discovery deadline, a movant must show "good cause" under Fed. R. Civ. P. 16(b)(4), which includes both an explanation of why more time is needed and a showing that the movant diligently sought the discovery she now seeks to secure beyond

the deadline.[5]  See Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 614 F.3d 57, 84 (3d Cir. 2010).  Walker was aware of Tinney's role in the investigation of her internal complaint from the time she filed it in 2008.  The record does not show why she should have been excused from being more diligent in securing Tinney's deposition.  Thus, the District Court's finding that Walker did not provide good cause to extend the discovery deadline to depose Tinney was well-founded and we will not disturb it.

IV.

For the foregoing reasons, we will affirm the District Court's orders granting summary judgment in favor of Centocor and denying Walker's requests for discovery-related relief.

---

[5] Although Walker stated that her motion was made pursuant to Fed. R. Civ. P. 6, Rule 16 is the more appropriate rule for motions to extend a discovery schedule embodied in a pretrial scheduling order.  Regardless, both rules require a showing of good cause.  Fed. R. Civ. P. 6(b)(1); Fed. R. Civ. P. 16(b)(4).