**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1733
_____

SHARON M. JAMES,
                                        Appellant

v.

A.C. MOORE ARTS AND CRAFTS INC./SBAR'S INC.; LAURA DORON;
STARMANE HAYMAN; A.C. MOORE ARTS & CRAFTS, INC.,

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:18-cv-00063)
District Judge: Hon. Colm F. Connolly, U.S.D.J.

_____

Submitted Under Third Circuit LAR 34.1(a)
January 28, 2022

Before: CHAGARES, *Chief Judge*, McKEE and MATEY, *Circuit Judges.*

(Filed:  February 3, 2022)
_____

OPINION*
_____

---

  * This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge.*

Before it closed its doors for good, Sharon James worked for A.C. Moore Arts & Crafts, Inc. ("A.C. Moore") for almost a decade. Despite first "loving" her job, (App. at 811), things turned sour when A.C. Moore instituted changes that impacted James's hours and responsibilities. James filed four charges of discrimination against A.C. Moore and, when the Delaware Department of Labor ("DDOL") dismissed them, she sued in federal court. The District Court granted A.C. Moore's motion for summary judgement and, finding no error, we will affirm.

## I. BACKGROUND

### A. The Allegations

A.C. Moore hired James in 2009 as a part-time Activities Specialist, a position that emphasized "flexibility" in duties, including stocking and checkout. (App. at 862.) In 2011, A.C. Moore revised James's job description to add product promotion and class instruction. In 2013, A.C. Moore implemented a "Static Schedule," assigning all employees regular shifts that reduced the number of scheduled hours per week for most positions, including the Activities Specialist. In response, James filed an age discrimination charge with the DDOL. A second charge followed, alleging retaliation for the first charge because of reduced hours, changed responsibilities, and negative performance reviews. A third charge again alleged retaliation based on adverse work assignments. And a fourth charge related

2

to workplace lockers.[1] Complaining of cold conditions in the store, James voluntarily resigned in March 2018.

## B.    The Lawsuit

James sued, alleging violation of the Age Discrimination in Employment Act of 1967 ("ADEA"). She also alleged that A.C. Moore retaliated against her and created a hostile work environment.[2] The District Court dismissed part of the complaint, and then granted A.C. Moore summary judgement on the remaining claims. This timely appeal of the decision granting summary judgment followed.[3]

## II. DISCUSSION

We review a grant of summary judgement[4] de novo. *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021). Summary judgement is appropriate only if "'there is no genuine dispute as to any material fact' and, viewing the facts in the light most favorable to [James], [A.C. Moore] 'is entitled to judgment as a matter of law.'" *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018) (quoting FED. R. CIV. P. 56(a)).

---

[1] The incident stemmed from a policy change requiring employees to request a locker, rather than choosing their own. When several lockers were secured with zip-ties, James cut the tie off the locker she historically used. She alleges her personal items were then removed from the locker and discarded.

[2] James also filed suit against two individual defendants. The District Court dismissed both claims because the ADEA does not provide for individual liability. James does not appeal that decision.

[3] The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291.

[4] James references allegations that the District Court dismissed at an earlier stage in the litigation. Because James did not appeal those rulings, and does not appeal them now, we do not address those facts. *See In re Wettach*, 811 F.3d 99, 115 (3d Cir. 2016) (holding that an argument not developed in an opening brief is forfeited).

"Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). James appeals only the District Court's award of summary judgement on her retaliation claim, so we do not address her other claims. *See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 145–46 (3d Cir. 2017).

Without direct evidence of retaliation, we use the three-part *McDonnell Douglas* framework requiring James to establish that 1) she engaged in protected activity, 2) she was subject to an adverse action, and 3) there is a causal connection between the protected activity and adverse action. *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Then, the burden of production shifts to A.C. Moore to present a "legitimate, non-retaliatory reason" for the adverse action. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015). And if A.C. Moore advances such a reason, the burden shifts back to James to show that A.C. Moore's proffered explanation was false, and that retaliation was the "real reason" for the adverse action. *Id.* (citation omitted). We address each allegation in turn.[5]

## A.     Demotion, Change in Duties, and Adverse Assignments

James alleges that A.C. Moore retaliated against her when it reassigned her job duties and demoted her. James satisfies the first element of her prima facie case because she filed four charges of discrimination. *See Daniels*, 776 F.3d at 193 ("For purposes of

---

[5] On our read, only the first two allegations are included within James's third and fourth DDOL charges. But the District Court addressed the final two allegations, and A.C. Moore follows suit in its Response Brief. So we address them here as well.

the first prong of a prima facie case of retaliation, protected 'opposition' activity includes . . . an employee's filing of formal charges of discrimination."). But she does not establish that these allegations constitute adverse actions. An adverse action is one that "would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 220 (3d Cir. 2017) (quoting *Daniels*, 776 F.3d at 195). James's job title never changed and she testified that "[n]obody told [her] that [she] lost the activities specialist job"—in person, on paper, or otherwise. (App. at 711.) Nor was her hourly rate of pay ever reduced.

And James's duties did not change, either. Working at the cash register was always a part of her job description, while light janitorial duties were added to all non-exempt positions in 2016. In all, her belief that she was "demoted," (App. at 711), amounts to an "[u]nsupported assertion[]," which cannot overcome a motion for summary judgement. *Betts*, 621 F.3d at 252.

## B. Locker Assignment

Next, James argues that A.C. Moore retaliated against her by taking her locker away. That is enough to show a protected activity (as it followed her administrative charges and internal complaints), but it does not show an "adverse action." Assuming the locker was once assigned to James, A.C. Moore changed its policy to require all employees—not just James—to submit a locker request. And even if this were an adverse action, the locker change occurred eighteen months after the third charge and seven months after James filed an internal complaint. These time frames are not "unusually suggestive." *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232–33 (3d Cir. 2007) (three months

5

"cannot create an inference of causation and defeat summary judgment"); *Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007) (five months "insufficient to raise an inference of causation"). Considering the circumstances, no "reasonable factfinder could determine that [James's] engagement in a protected activity was the likely reason for" the locker reassignment, *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 261 (3d Cir. 2017) (emphasis omitted).

## C.     Lower Performance Evaluation

Next, James alleges that her performance evaluations dropped after she filed her charges. Recall that James filed her first charge in February 2013, and the second in June 2013. James received her 2012 "Meets Expectations" after her first filing, the same rating she received in 2009 and 2010. It was not until the 2013 performance review that James's score declined.[6]

But this still does not make a prima facie case. First, James testified that her score rebounded over the next years. One negative evaluation, standing alone, is not enough to constitute an adverse action. *See Walker v. Centocor Ortho Biotech, Inc.*, 558 F. App'x 216, 220 (3d Cir. 2014). Second, even if one negative score were enough, James was not disciplined, nor was her compensation impacted. And "[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).

---

[6] Though the record is unclear as to when James received her 2013 review results, we construe the facts in the light most favorable to James, *Shuker*, 885 F.3d at 770, and assume that James received this lower-than-usual score after filing the second charge.

**D.     False Reports**

Finally, James contends that A.C. Moore retaliated against her by making a false submission to the DDOL. This unsubstantiated allegation cannot overcome a motion for summary judgement. *See Betts*, 621 F.3d at 252.

### III.  CONCLUSION

James fails to establish a dispute as to any material fact and we will affirm the District Court's award of summary judgement.