NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2898
_____

CRAIG S. LECADRE,
Appellant

v.

ATTORNEY GENERAL PENNSYLVANIA; JOSHUA D. SHAPIRO; BRUCE
BEEMER; KIRSTEN HEINE; REBECCA S. FRANZ; ROBERT DRAWBAUGH; ERIC
NORMAN; SHARI MCGRAW; JOHN/JANE DOES
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1:21-cv-00997)
District Judge:  Honorable Jennifer P. Wilson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 22, 2024
Before:  BIBAS, PORTER, and MONTGOMERY-REEVES, Circuit Judges

(Opinion filed: May 30, 2024)
_____

OPINION*
_____

PER CURIAM

---

\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Craig S. LeCadre, proceeding pro se, appeals from the District Court's grant of summary judgment in favor of the defendants in this employment discrimination and retaliation action. We will affirm.

I.

The procedural history of this case and the details of LeCadre's claims are well known to the parties, are set forth in the District Court's opinions, and need not be discussed at length. Briefly, LeCadre, who is Black, was employed as a Special Agent in the Pennsylvania Office of Attorney General (OAG). On September 11, 2019, he received a letter stating that he was being placed on paid administrative leave and that he needed to attend a fitness-for-duty evaluation. The letter noted that neither the evaluation nor the placement on administrative leave impacted LeCadre's classification as a special agent or constituted employee discipline. The OAG Director of Human Resources ordered that evaluation because of "increasing concerns about Mr. LeCadre's behavior." (ECF 54-10, at 1.)

The psychologist who performed the evaluation concluded that LeCadre was fit for duty. LeCadre was permitted to return to work on October 9, 2019, but he instead asked to be placed on sick leave. LeCadre returned to work in January 2020, and was assigned a "large scanning job" in May 2021. In a performance evaluation that covered the period from August 2018 through August 2019, and which was completed in June 2020, LeCadre received an overall "satisfactory" rating, though he was rated as "needs improvement" in the categories of communications, interpersonal relations, and work habits. In June 2021, LeCadre's supervisor, Eric Norman, ordered him to return to work

before the completion of a month-long vacation. He voluntarily retired from OAG in 2022.

Meanwhile, in December 2019, LeCadre filed a charge of discrimination, which he later amended to include allegations of retaliation, with the Equal Opportunity Commission (EECC) and the Pennsylvania Human Relations Commission. The EEOC issued a right to sue letter on April 7, 2021.

II.

LeCadre filed a counseled complaint in the United States District Court for the Middle District of Pennsylvania, raising disparate treatment and retaliation claims under Title VII of the Civil Rights Act of 1964 (Count I), as well as violations of 42 U.S.C. § 1981 (Count II), § 1983 (Count III), and § 1985 (Count IV). He named as defendants the OAG, several of its employees, and former Pennsylvania Attorneys General Josh Shapiro and Bruce Beemer. The District Court dismissed Beemer by stipulation of the parties, granted a motion to dismiss that was filed by Shapiro,[1] LeCadre v. Pa. Office of Att'y Gen., 2022 WL 4473591, at *1 (M.D. Pa. Sept. 26, 2022), and dismissed Count I as to the OAG employees because they cannot be liable under Title VII. Id. at *3 n.2 (citing Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1077-78 (3d Cir. 1996) (en banc)).[2] Next, OAG and its employees moved for summary judgment. The District

---

[1] Although the District Court dismissed Court IV without prejudice as to Shapiro, LeCadre, 2022 WL 4473591, at *5, LeCadre did not file an amended complaint.

[2] LeCadre does not address these determinations in his opening brief, and, as the Appellees note, he has thus forfeited any challenge to the determinations on appeal. See United States v. Savage, 970 F.3d 217, 280 n.70 (3d Cir. 2020) (indicating that an

3

Court granted that motion, holding in relevant part that LeCadre failed to establish a prima facie case of disparate treatment or retaliation, that § 1981 does not create a private right of action, that LeCadre's claim under § 1983 for First Amendment retaliation failed because he did not speak as a citizen when reporting on an official's misconduct, and that LeCadre failed to establish a conspiracy under § 1985. LeCadre v. Pa. Office of Att'y Gen., 2023 WL 6450510, at *8-12 (M.D. Pa. Sept. 29, 2023).[3] Proceeding pro se, LeCadre timely appealed.

### III.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment for OAG and its employees. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the non-moving party, "there is 'no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law.'" Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010) (citation omitted). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We may affirm on

---

appellant forfeits an issue if she fails to raise it in her opening brief or makes only a passing reference to it in that brief).

[3] The District Court also held that LeCadre's claim pertaining to a demotion in 2015 was not exhausted and that the continuing violations doctrine was inapplicable to his disparate treatment and retaliation claims. LeCadre, 2023 WL 6450510, at *6-7. LeCadre does not challenge these determinations on appeal. See Savage, 970 F.3d at 280 n.70.

any basis supported by the record.  See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

## IV.

After careful review of the record and the parties' filings, we agree with the District Court that summary judgment for the OAG was proper on LeCadre's Title VII claims.

### A.  Disparate Treatment

LeCadre did not establish a prima facie case of racial disparate treatment.  To survive summary judgment on a Title VII disparate treatment claim, a plaintiff must first establish a prima facie case that (1) he is a member of a protected class; (2) he is qualified for the position he sought to retain or attain; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances that may give rise to an inference of intentional discrimination.[4]  See Makky v. Chertoff, 541 F.3d 205, 214 (3d

---

[4] The District Court's analysis of LeCadre's disparate treatment claim focused on the third prong, which it described as follows:  "[a]n adverse employment action under 42 U.S.C. § 2000[]e-2(a) is an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" LeCadre, 2023 WL 6450510, at *8 (quoting Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004)).  Recently, however, the Supreme Court held that "an employee challenging a transfer under Title VII" need not "meet a heightened threshold of harm— be it dubbed significant, serious, or something similar."  Muldrow v. City of St. Louis, Missouri, 601 U.S. --, 2024 WL 1642826, at *4 (U.S. Apr. 17, 2024).  We need not address Muldrow's effect on the District Court's adverse employment action analysis because, as explained in the text below, LeCadre's disparate treatment claim fails on the alternative ground that he did not demonstrate circumstances that would give rise to an inference of intentional discrimination.

Cir. 2008). To support an inference of unlawful discrimination, the employee generally must present evidence that the employer treated a similarly situated employee who was not a member of the plaintiff's protected class more favorably. See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 413 (3d Cir. 1999). "The central focus of the prima facie case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003) (per curiam) (internal quotation marks removed). Determining whether employees are similarly situated involves considering factors such as the employees' job responsibilities, their supervisors, and the nature of the misconduct. See In re Tribune Media Co., 902 F.3d 384, 403 (3d Cir. 2018).

LeCadre did not put forth any direct evidence of discrimination, and we conclude that his placement on paid administrative leave for approximately one month pending the results of a fitness-for-duty evaluation did not occur under circumstances giving rise to an inference of discrimination. LeCadre identified only one OAG employee who he claimed was treated more favorably: a Caucasian Special Agent who we will identify by the initials K.M. It is clear, however, that K.M was not similarly situated to LeCadre. K.M. and LeCadre were both Special Agents in the same unit. But, according to the OAG's response to LeCadre's first EEOC charge, K.M. approached Norman with concerns about a medical issue that she believed affected her ability to do her job. Thereafter, OAG and K.M. "engaged in an interactive process . . . to determine accommodations that would permit her to perform her job duties." (ECF 54-18, at 5 of 50.) Notably, though, K.M. did not engage in the type of behavior, which we describe below, that prompted the

6

fitness-for-duty evaluation of LeCadre. See Tribune Media Co., 902 F.3d at 403 (stating that comparators must be similarly situated in all respects). Because LeCadre failed to present evidence that a similarly situated OAG employee outside his protected class was treated more favorably, or any other evidence giving rise to an inference of discrimination, he did not establish a prima facie case of racial disparate treatment.[5]

Even if LeCadre could establish a prima facie case, his claim would fail because, under the burden shifting framework established by McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802 (1973), he did not demonstrate that the legitimate, non-discriminatory reason offered by the OAG for placing him on paid administrative leave and requiring the fitness-for-duty evaluation was pretextual. The OAG took those actions because of "increasing concerns about Mr. LeCadre's behavior." (ECF 54-10, at 1.) That behavior included emails from LeCadre to Norman, "the tone of . . . [which] seem[ed] completely out of line," according to a Chief Deputy Attorney General. (ECF 54-7, at 1.) In addition, Norman had reported that, when discussing that email exchange, LeCadre "almost immediately became upset," stated that Norman's comments in the emails were "out of line," questioned whether Norman was accusing him of being a liar, and advised Norman that he (LeCadre) was an experienced investigator, that he knew what he was doing with respect to an investigation, and that Norman needed him more

---

[5] On appeal, LeCadre complains that the District Court failed to consider the fact that Norman ordered him to return to work before the completion of his month-long vacation in June 2021. But LeCadre did not allege that Norman's decision was racially motivated or allege the OAG treated a similarly situated employee who was not a member of LeCadre's protected class more favorably.

than he needed Norman. (ECF 54-9, at 1-2.) The OAG Director of Human Resources also cited reports from other employees that LeCadre "is overzealous and obsessed with work," "often shares conspiracy theories relative to his cases," "is easily frustrated and gets visibly agitated if others do not agree with his theories," "has a difficult time working with the attorneys assigned to his cases," and "has exhibited paranoid tendencies." (ECF 54-10, at 1.) LeCadre set forth no facts indicating that these legitimate, nondiscriminatory reasons for placing him on paid administrative leave and ordering a fitness-for-duty evaluation were pretext for racially disparate treatment.

We also conclude that LeCadre failed to establish a prima facie case of disparate treatment based on his assignment to the scanning job.[6] Norman explained that it was his "responsibility . . . to assign work to where it will be done." (ECF 64-6, at 67.) At the time of the assignment, the "cases [LeCadre] was assigned were not moving to the point where some of them needed [to be] reassigned to other agents just to bring them to a resolution." (Id.) Because LeCadre "wasn't completing investigations" and "needed something to do," Norman assigned him to the scanning job, which Norman viewed as "casework" and "a very important task" in a "mammoth case." (Id. at 66-67.) LeCadre did not present evidence to permit a factfinder to disbelieve these reasons or to conclude

---

[6] The District Court held that the scanning job assignment was not an adverse employment action, see LeCadre, 2023 WL 6450510, at *8-9, but we do not affirm on that basis. See note 4, *supra*.

that these proffered legitimate, nondiscriminatory reasons for the assignment were pretextual.[7] See McDonnell Douglas, 411 U.S. at 804.

## B. Retaliation

To establish a prima facie case of retaliation, LeCadre must show that he engaged in Title VII-protected activity, that he suffered an adverse action, and that a causal nexus existed between the adverse action and protected activity. See Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 346 (3d Cir. 2022). To satisfy the second prong, LeCadre had to "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 195 (3d Cir. 2015) (internal quotation marks and citation omitted); see also Muldrow, 2024 WL 1642826, at *6 (reiterating that the "materially adverse" standard applies to Title VII retaliation claims). In his complaint, LeCadre alleged that the "satisfactory" rating in the performance review completed in June 2020 was in retaliation for his filing a discrimination charge with the EEOC in December 2019.[8] The District

---

[7] We note that LeCadre also argues that the loss of his firearm while on paid administrative leave constituted an adverse employment action. As the Appellees point out, however, LeCadre raises this claim for the first time on appeal. Therefore, we will not consider it. See Savage, 970 F.3d at 280 n.70.

[8] LeCadre now identifies the scanning project and the cancellation of leave as evidence of retaliation. If we were to consider this argument for the first time on appeal, see Savage, 970 F.3d at 280 n.70, we would conclude that LeCadre failed to establish a causal nexus between the December 2019 EEOC complaint and the May 2021 scanning assignment or the June 2021 leave cancellation. See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) (concluding in the context of a Title VII retaliation claim that "[a]lthough there is no bright line rule as to what constitutes unduly suggestive

Court held that the "satisfactory performance review was not an adverse employment action, and LeCadre fails to prove a prima facie case of retaliation under Title VII." LeCadre, 2023 WL 6450510, at *10. We agree. There is no record evidence suggesting that the performance evaluation carried with it any threat of discipline or other action that would dissuade a reasonable employee from reporting discrimination.[9] LeCadre alleged that the review prevented him from finding work after he retired, but he provided no evidence to support that allegation. Instead, he only speculated that potential employers declined to hire him after they searched online under his name. Cf. Turner v. Gonzales, 421 F.3d 688, 696 (8th Cir. 2005) (affirming the district court's grant of summary

---

temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment").

[9] LeCadre filed in this Court a "Motion for Relief from Judgment," pointing out differences between the performance evaluation that he received in June 2020 and the evaluation that was attached to the OAG's position letter that was sent in response to his amended EEOC charge. He identifies various discrepancies and argues that they somehow led the District Court to weigh the evidence in favor of the defendants. But the District Court specifically acknowledged and discussed the differences between the two documents and accurately noted that the substantive portions of each were identical. The District Court concluded that these were different versions of the same document and that it would consider both in its analysis. LeCadre has not explained why these differences are relevant to the outcome of his retaliation claim or how they affected the District Court's consideration of the evidence.

The other arguments presented in the "Motion for Relief from Judgment," as well as in another similar motion filed shortly thereafter are raised for the first time on appeal. In particular, LeCadre argues that: (1) his attorney failed to bring a hostile work environment claim in the District Court; (2) defendants committed criminal fraud offenses; and (3) the District Court should have considered his union contract, which was not part of the record before the District Court. We will not consider these arguments for the first time on appeal and deny LeCadre's "Motion[s] for Relief from Judgment."

10

judgment where the plaintiff failed to show that she would have gotten a promotion absent a negative performance review).

V.

Finally, we conclude that the District Court properly granted summary judgment for the OAG and its employees on LeCadre's § 1985 civil conspiracy claim.[10] Section 1985(3) requires a plaintiff to show that invidious racial or otherwise class-based discriminatory animus lay behind the defendant's actions, and he must set forth facts from which a conspiratorial agreement between the defendants can be inferred. See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-68 (1993). According to LeCadre, the defendants' conspiratorial actions included "submitt[ing] false allegations" in response to his EEOC complaint, the decision to assign him to the scanning job, and the preparation of a negative performance evaluation. (ECF 1, at ¶ 115-19.) There is no indication in the record, however, that two or more defendants reached an understanding or agreement to violate his civil rights. See Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008). On appeal, LeCadre suggests that evidence of a conspiracy exists in the fact that the performance evaluation he received in June 2020 differed from the one that OAG submitted to the EEOC in response to his charge of discrimination. But, as explained above in the margin, see note 9, *supra*, the different versions of the evaluation were substantively the same. LeCadre emphasizes the fact that Norman was unable to

---

[10] LeCadre has forfeited any challenge to the rejection of his claims under § 1983 and § 1985 because he did not raise those issues in his brief. See Savage, 970 F.3d at 280 n.70.

name the person who had provided the version that was submitted to the EEOC. But it is mere speculation to contend that Norman's inability to name that person demonstrates racial animus. Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).

## VI.

For the foregoing reasons, we will affirm the District Court's judgment. LeCadre's "Motion[s] for Relief from Judgment," which we treat as seeking summary action, are denied. See note 9, *supra*.